# JENNINGS V. CARTER.

Decided May 10, 1890.

1. *Sale of homestead under execution—Fraudulent advertisement.*

Where a sheriff colludes with an execution creditor to levy upon his debtor's homestead during his temporary absence, and to publish the advertisement and post the notices of sale where the debtor would not be likely to discover them, in order to deprive him of his right to claim his homestead as exempt, the sale is fraudulent and void.

2. *Fraudulent execution sale—Attorney's knowledge.*

A purchaser at a fraudulent execution sale is affected with the guilty knowledge of his attorney.

APPEAL from *Washington* Circuit Court in Chancery. J. M. PITTMAN, Judge.

Jennings brought ejectment against Carter to recover a certain tract of land, being Carter's homestead and situated a mile and a half from Fayetteville. The testimony showed that there were three judgments against Carter, one in favor of Rudolph, another in favor of Vernon & Skillern and a third in favor of Jennings. In January, 1887, West, attorney for Rudolph, during Carter's temporary absence from home and without his knowledge, had his homestead levied upon under execution to satisfy Rudolph's judgment. Under West's direction the sale was advertised in a paper published at Springfield, a small town in the county ten miles distant from Fayetteville, the paper having little or no circulation in Fayetteville, although there were two or three newspapers published in the latter place. No printed notice of the sale was posted at Carter's residence, but, under West's directions, one was posted on a fence-rail on Carter's fence some distance therefrom. West bought in the land for Mac Devin. During the same month executions on the other two judgments were procured. Under the directions of the attorney for the execution plaintiffs, advertisement was made in the Springfield paper, and the only notice posted on the premises was posted on a haw tree between a quarter and a half a mile from Carter's residence. In explaining this, the sheriff said: "My object in putting up the notice where I did was to save distance and the unpleasantness of having to post the sale of land where all the family can see me." Jennings purchased the land under his execution, bidding the amount of his judgment. Vernon & Skillern purchased under their judgment, likewise bidding the amount of their judgment. Sub-

sequently Jennings purchased the interests of Devin and Vernon & Skillern, taking deeds from them and agreeing to pay for the land in case of recovery. Defendant knew nothing of either levy or sale, until the sales of his homestead had been made.

Defendant filed an answer averring that the execution sales were fraudulent, and a cross-bill asking that the cause be transferred to equity and the various deeds to plaintiff cancelled. The cause was so transferred, and the deeds to plaintiff cancelled.

*B. R. Davidson and L. Gregg* for appellant.

1. The Rudolph debt was contracted under the constitution of 1868, and Carter's exemptions were only such as existed under the constitution of 1868. 42 Ark., 385; 15 Wall, 610; Thomps. H. & Ex., sec. 10; 28 Ark., 488. Under the law a debtor must schedule or lose his homestead. 28 Ark., 488; 47 Ark., 400. The act of 1887 does not apply, as it is not retroactive. Acts 1887, p. 9; 40 Ark., 427; 15 Am. Dec., 242, note 248.

2. No fraud or collusion is proven. The law was strictly complied with. Wade on Notice, sec. 1086; Murfree on Sheriffs, sec. 668; 10 Ark., 545.

3. If the sheriff failed to comply with the law, his remedy was against the sheriff. Herman on Ex., sec. 342; 22 Ark., 19; 14 Ark., 9.

4. Devin was an innocent purchaser at a sale under a regular judgment and execution without any knowledge of any irregularity, and his title passed to appellant untainted with fraud. Freeman on Judg., secs. 109-110; Herman on Ex., sec. 342; 22 Ark., 19; 14 Ark., 9; 10 Ark., 541.

*J. D. Walker* for appellee.

1. It was not essential for Carter to claim his homestead.

before sale, by schedule. *Norris v. Kidd*, 28 Ark., 488, is outweighed by other and better decisions. 7 Mich., 488; 8 Mich., 50; 20 Mich., 79; 11 Mich., 358; Thomps. on Ex., sec. 652; 20 Ga., 200; 22 Ga., 165; 21 Ill., 105; 1 Humph., 390; 54 Ind., 509; 17 Neb., 620.

2. The failure to schedule was not his voluntary act or omission nor a waiver, but was caused by circumstances beyond his control and by the fraud and collusion of plaintiff and others acting for him.

3. Under the act of 1887, a debtor may claim his homestead after sale, when suit is brought for possession.

HEMINGWAY, J. The land in controversy was sold under executions against the appellee in January, 1887, and comprised his homestead. He was entitled to hold it as exempt to him from sale under execution, but, as the law then stood, he was required to claim it before sale in the manner prescribed. Art. 9, sec. 3, Const.; Mansf. Dig., 3006. He did not claim it before sale, and the question is, did he lose it thereby? The answer depends upon the effect which the law will give to certain conduct of the plaintiffs in the executions in the proceedings relating to the sale.

The law regulating the sale of lands under execution provides that notice of such sale shall be given for twenty days next before the day of the sale by posting printed advertisements at the court-house door and five other public places in the county in which the sale is to be made, one of which must be the premises to be sold, and by publishing the same in a newspaper published in the county. Mansf. Dig., sec. 3049. The notice is intended to inform the owner that his property will be sold, and to procure the attendance at the sale of persons desiring to purchase it. Personal notice to the owner of land is not required, and the only guaranty that the law provides him that it will not be sold without his knowledge is in the advertisement before mentioned. The importance

to him of a substantial compliance with the law in that regard is therefore apparent.

**1. Sale of homestead under execution—Fraudulent advertisement.** It is the duty of the sheriff, in following the directions of the statute, to make his advertisement fulfill the purpose of the law; in posting notice on the premises to be sold, he should select a place where it would most likely be seen, and not one where its discovery would be the least probable; and in publishing in a newspaper, he should select a paper most likely to give the information to those for whom it is intended, and not one which they would probably never see. No intelligent officer desiring to discharge his duty would post the notice on a tree in a forest or publish in a newspaper without circulation in the neighborhood, unless in the particular case no other means of notice was available. To do so would be to violate the spirit of the law, although complying with its letter. If such should be done by the procurement of the plaintiff in execution, it would be a gross wrong, and, if it resulted in an injury to the defendant, a fraud upon his rights. To post a notice where it would never be seen, out of a regard for the feelings of the debtor's family, might be commendable, if it did not evidence a disregard of his constitutional right to hold a home for them.

Upon a careful reading of the evidence in this case, we are led to the conviction that the proceedings before the sale were conducted under the directions of the plaintiffs in execution, with the hope and to the end that the appellee would never learn of the pending sale, and thereby lose his homestead. In order to accomplish the wrong, they attempted to defeat the purpose of the law in providing for a notice of sale, while making a pretense of observing it. They could acquire no rights through such a proceeding.

**2. Fraudulent execution sale—Knowledge of attorney.** It is contended that title passed untainted with fraud to Devin, who was a stranger to the proceeding, and from him to appellant. To this it is a sufficient answer that Devin purchased through West, his attorney, who placed the proceed-

ing to sell upon foot, and consummated it after the relation was fixed. Devin is affected with the knowledge of West, and on the trial he testified that he "thought it looked like the notice had been published with the intent to prevent appellee and his friends from seeing it." We think the appearances justified that impression.

Creditors cannot take advantage of the temporary absence of their debtors to obtain executions, give notice of sale which will never reach the debtors or their friends, and thereby deprive them of their constitutional exemptions. Such efforts should not be made and can never receive the countenance of a court. As the land has not passed to a *bona fide* purchaser for value, the appellee was entitled to the relief asked.

The judgment will be affirmed.