ALLISON *v*. FALCONER.

Opinion delivered May 13, 1905.

ATTORNEY AND CLIENT—NOTICE.—Where the attorney of the grantee in a deed was especially charged with the duty of having such deed executed and acknowledged, notice to such attorney of a defect in the title, received in the course of performance of such attorney's duty, was notice to the grantee.

Appeal from Benton Chancery Court.

JOHN N. TILLMAN, Judge.

Affirmed.

*J. A. Rice* and *W. S. Floyd,* for appellants.

Jefferson's relation to the lot in controversy is that of a *bona fide* purchaser for value. Kirby's Dig. § 5396; 61 Ark. 123; 1 Jones, Mortg. 550; 49 N. Y. 286; 66 N. Y. 113; 44 N. Y. 371; 37 N. Y. 375. Appellee was guilty of laches. 162 Mo. 424; 93 Va. 349; 34 Ark. 212.

*W. D. Mauck* and *McGill & Lindsey,* for appellee.

The record of the deed of trust was constructive notice to Jefferson. 24 Am. & Eng. Enc. Law, 103. Jefferson could only be entitled to protection for money actually advanced by him. 44 Ark. 48. Notice to Jefferson's attorney was notice to Jefferson. 3 Am. & Eng. Enc. Law, 320; 53 Ark. 252.

HILL, C. J. The appellants executed a mortgage to a building and loan association, and the property was described as lot No. 6, Curtis Addition to the original town of Bentonville. The facts conclusively show that lot 6 in the original town of Bentonville was intended. It was the home of the appellants, and lot 6 in Curtis Addition was owned by another party. The error was discovered by the attorney of the loan company, and shortly afterwards he learned that the appellants were on a trade with a party from Kansas, and he sought appellants, but failed to get an

interview with either of them. This trade was not made, but at the time an abstract of title was prepared, and it failed to show the mortgage to the building and loan association because the description in the mortgage did not call for the property abstracted. Allison made a trade with Jefferson, a friend and business associate, to whom he was considerably in debt, to take the property for his debt and some other debts Allison owed. Jefferson claimed he paid the difference in cash between the debt to himself and the other debts, which he assumed by executing his notes, but his evidence on that score is lacking in precision and definiteness. He submitted the abstract to his attorney, who pronounced the title there shown to be free of lien, and Jefferson instructed his attorney to prepare the deed from Mrs. Allison to himself, and have it executed and acknowledged. The attorney took a notary public, and went to the Allison home, and the attorney for the loan company, having his suspicions aroused, followed them, and had a conversation with Allison, which was unsatisfactory, and then saw Jefferson's attorney, and told him that there was a mortgage on the property. Jefferson's attorney replied that the records did not show it. The attorneys agree as to the conversation between them at the time. Mrs. Allison executed the deed to Jefferson a few minutes after this conversation, and the attorney carried it to Jefferson, who told him to record it, and he took it from Jefferson's place of business, which was near the courthouse, to the clerk's office, and there found a suit filed to reform the mortgage. The attorney for the loan company went immediately from the Allison house to the courthouse, a distance of less than two blocks, and filed the suit (the complaint was already prepared), and had summons served at once. The filing of the suit and execution of the deed must have been practically simultaneous. The only consideration passing at the time of the delivery of the deed was Jefferson's notes, excepting his vague claim of some cash payment, and it is uncertain whether the notes were delivered before or after Jefferson had notice of the suit.

There is a conflict in the evidence between Jefferson and the attorney for the loan company as to whether the latter had informed him (Jefferson) of the existence of the mortgage on

the property in question, and had for his benefit procured from the company a statement of the amount due, and informed him of it, prior to the purchase by Jefferson. On the conflict in this evidence the chancellor may well have found that Jefferson had actual knowledge of the mortgage; or, passing that, that the notice to his attorney, who was specially charged with the duty of having the deed executed and acknowledged, was notice to him when he received such knowledge in the course of the performance of these duties. *Jennings v. Carter,* 53 Ark. 242.

The only question presented is whether Jefferson was an innocent purchaser, and the chancellor has found that he was not, and the judgment is affirmed.